## MACOMB MFG. CO. v. MANTLE LAMP CO. OF AMERICA.

Circuit Court of Appeals, Seventh Circuit.
May 28, 1927.

Rehearing Denied December 5, 1927.

No. 3812.

**Patents ⊂⊃328—1,435,199, claims 1, 4–7, 10–14, 17, 18, 21–24, relating to heat-insulated, nonvacuum type, receptacles, held invalid.**

Blair patent, No. 1,435,199, claims 1, 4–7, 10–14, 17, 18, 21–24, relating to receptacles of the heat-insulated, nonvacuum type, *held* invalid for lack of invention.

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois.

Patent infringement suit by the Mantle Lamp Company of America against the Macomb Manufacturing Company. Decree for plaintiff, and defendant appeals. Reversed, with direction.

Hervey S. Knight, of Chicago, Ill., for appellant.

Charles Neave, of New York City, for appellee.

Before ALSCHULER, EVAN A. EVANS, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This is an appeal from a decree holding patent No. 1,-435,199, issued to the appellee as assignee of Lewis Van Deventer Blair, valid, and claims 1, 4, 5, 6, 7, 10, 11, 12, 13, 14, 17, 18, 21, 22, 23, and 24 thereof infringed. Appellee, in its brief, after differentiating these 16 claims, says they "are not redundant, but define one or another of the aspects of the invention." 1 and 17 are put forth as "examples" of the claims. These are:

"1. A heat-insulated vessel of the nonvacuum type, having an outer jacket of nonfrangible material, an inner container of frangible material, said inner container being bonded to and pendently supported from said jacket, and heat-insulating and shock-absorbing means surrounding said container for limiting oscillations of said container while permitting expansion thereof by changes of temperature.''

"17. A heat-insulated receptacle of the non-vacuum type, including a multi-section outer jacket, a strong vitreous single-walled inner container sustained in the upper portion of said outer jacket, resilient heat-insulating material disposed between said jacket and said container for limiting oscillation of said container while permitting expansion thereof by changes of temperature, one section holding a cover, and a seal to prevent . moisture from reaching said insulating material."

The patent says: "The invention relates to receptacles of the heat-insulated, non-vacuum type." Such receptacles are found in prior patents. We will therefore consider this case without reference to the heat-insulated, vacuum receptacles so common when the patent was issued.

After stating, in general terms, the state of the art at the time of Blair's application, appellee says: "The problem, therefore, which confronted Blair, * * * was the production of a receptacle, without the intervention of a vacuum and of relatively large size, for the maintenance for many hours of a desired high or low temperature of food or liquid contents, and of a better shock-resisting character."

This problem, in the language of appellee, was solved by the following means:

"His receptacle includes a metallic protective jacket and a single wall container."

"This container is fixedly and firmly connected at its upper end with the top of the outer metal jacket by means of a bond."

"The space between the jacket and the body of the inner container, as distinguished from the neck portion, contains comminuted material, which material impedes the transfer of heat by induction between the inner container and the jacket and limits the pendulous vibrations of the container within the jacket."

"The comminuted material, if allowed to become moist, would be a good conductor of heat. But moisture is kept therefrom by an inturned flange extending from the neck of the jacket, which flange while acting as a seal also protects the frangible neck of the

container and positions the container in the jacket while the parts are being assembled. The means constituting a bond and also acting as a seal, which holds the neck of the container in place within the neck of the jacket, also operates to prevent moisture from reaching the comminuted material, in case moisture should pass between the flange and the neck of the container."

And appellee continues:

"It will thus be seen that all of the elements above enumerated are tied together in a true combination producing a single and useful result and that if any one element, the jacket, the container, the spacing, or the packing were omitted, or some sealing means were not used to keep moisture away from the packing, and to pendently support the container so that only one path of heat conductivity is afforded, the device would not be such as efficiently to perform its intended functions."

The prior art discloses heat-insulated and shock-resisting receptacles of the nonvacuum type. Prior patents show each of the elements enumerated by appellee. We need only to call attention to three, which appear in the record: No. 211,092, issued to Heath, January 7, 1879; No. 358,732, issued to Clisbee, March 1, 1887; and No. 438,149, issued to Fox, October 14, 1890.

Heath calls his invention "an incased bottle," and says: "The object sought for being the prevention of breakages during transportation." This is the shock-resisting object of the patent in suit. Heath discloses an outer jacket, a single wall container, spacing between the jacket and the container, and the packing therein. The container has its neck extended up through the jacket, and the jacket and the container connect or contact with each other only at the extreme end of the neck. At no other point is the container in contact with the jacket. So far, Heath describes the construction of the patent in suit.

Clisbee calls his invention an "insulated can," and says: "The object of this invention is to furnish an improved insulated can for coffee and other beverages * * * so that the liquid may retain its heat. * * *" Clisbee has the outer jacket, the inner single wall container, the spacing between the jacket and the container, the packing in the spacing, and the neck of the container connecting with the jacket at the upper end of the neck and nowhere else. Blair positions these elements as they are positioned in Heath's and Clisbee's patents.

In these two patents we have disclosed every element claimed to be in the patent in suit, except the bond or bonding means which appellee says holds the container firmly and fixedly, pendently positioned in the jacket. This use of a bonding means to thus hold the container firmly and fixedly in its position, and also to prevent moisture from getting into the packing, is disclosed in the Fox patent.

This Fox patent is for a carboy, and shows an outer jacket, called a box or frame, a single wall container inside the jacket with a neck extending up through the jacket, and packing between the container and the jacket, and the patentee says: "Around this neck of the carboy I tightly pack plaster-of-paris or other suitable material, as shown at $B$ (in the drawing), for the purpose of firmly holding the carboy in place, * * * and also for the purpose of excluding moisture or water." And, again: "$B$ is a packing of plaster-of-paris or other suitable material, intended to hold the carboy firmly in place within the box or frame enclosing it and to exclude water or moisture from the packing $C$."

Thus we have all the elements in appellee's claims disclosed in these three prior patents, each operating in its old way and effecting its old result, and the only question to be decided is: Did it involve invention for Blair to take the bond from Fox and the other elements from Heath or Clisbee, or both of them, and assemble them in one heat-insulated, nonvacuum receptacle?

With Heath, Clisbee, and Fox in the field—Heath and Clisbee both showing (except the bond between the container and the jacket) the construction adopted by Blair, Heath's object being shock resistance and Clisbee's heat insulation, both using the same means and construction—did it involve invention to take Fox's bond and add it to Heath or Clisbee? We think this involved mechanical skill, and not inventive genius. In the language of the Supreme Court in Hollister v. Benedict Mfg. Co., 113 U. S. 59, on page 73, 5 S. Ct. 717, 724 (28 L. Ed. 901): "It is but the display of the expected skill of the calling, and involves only the exercise of the ordinary faculties of reasoning upon the material supplied by a special knowledge, and the facility of manipulation which results from its habitual and intelligent practice." A person skilled in the art pertaining to heat-insulated receptacles of the nonvacuum type, knowing what had been done before, and seeing these various elements performing their functions in the patents above mentioned, would not require a

flash of genius to combine with the structures shown by Heath or Clisbee a bond to hold the container in position and at the same time prevent moisture from getting into the insulating packing.

We are not now concerned with the particular bond set forth in appellee's patent, which says: "The substance of which the bond is composed is, preferably, a prepared shellac which is fully described in United States letters patent No. 1,309,967, granted to Simonson & Blair on July 15, 1919." If appellant used the bond described in that patent, for such use the suit should be for its infringement; but it is not claimed that appellant used this particular bond. It used plaster of paris, or a mixture of plaster of paris and cement or white lead, none of which, singly or combined, is the bond of appellee.

The result obtained by Blair may be a better structure than was ever before produced, and yet, for the lack of novelty of device or new result produced, it may have no patentable quality. He has assembled—combined, in the ordinary sense—old and well-known elements, but he has not made an invention.

Reversed, with direction to dismiss the bill of complaint for want of equity.